Jennifer R. Schwartz, (WSBA #38388)
WILDEARTH GUARDIANS
P.O. Box 13086
Portland, OR 97213
Tel: (503) 780-8281
jschwartz@wildearthguardians.org

Talasi B. Brooks (ISB #9712) (admitted *pro hac vice*)
WESTERN WATERSHEDS PROJECT
P.O. Box 2863
Boise ID 83701
Tel: (208) 336-9077
tbrooks@westernwatersheds.org

Lauren M. Rule, (OSB #015174) (admitted *pro hac vice*)
ADVOCATES FOR THE WEST
3701 SE Milwaukie Ave., Suite B
Portland, OR 97202
Tel: (503) 914-6388
lrule@advocateswest.org

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| WILDEARTH GUARDIANS, WESTERN WATERSHEDS PROJECT, and KETTLE RANGE CONSERVATION GROUP,<br><br>    Plaintiffs,<br><br>    v.<br><br>GLENN CASAMASSA, Pacific Northwest Regional Forester, U.S. FOREST SERVICE; RODNEY SMOLDON, Forest Supervisor, Colville National Forest, and U.S. FOREST | Case Number: 2:20-cv-00223-RMP |

SERVICE,                )
                        )
    Defendants,         )
                        )
and                     )
                        )
Diamond M Ranch, a Washington General )
Partnership,            )
                        )
    Defendant-Intervenor. )
_____

    Plaintiffs WildEarth Guardians, Western Watersheds Project, and Kettle Range Conservation Group (collectively "plaintiffs") object to defendants' $6338.00 bill of costs filed on September 24, 2021 (ECF No. 57). For the following reasons, the Court should not tax costs, or, at most, tax only the costs of purchasing the four flash drives necessary for lodging with the Court: (1) this suit was brought by public interest organizations to enforce conservation laws on behalf of the general public; (2) defendants have not shown that the costs claimed were necessary for this case; (3) several components of the costs claimed are not recoverable under 28 U.S.C. § 1920 or the amounts claimed are unreasonable; and (4) defendants failed to sufficiently itemize the costs allegedly incurred.

### I. THIS COURT SHOULD REQUIRE THE PARTIES TO BEAR THEIR OWN COSTS.

    Although there is a presumption in favor of awarding costs, this presumption can be overcome if there is a valid reason for requiring parties to bear their own costs. *See Ass'n of Mexican-Am. Educators v. Cal.*, 231 F.3d 572, 591-93 (9th Cir. 2000) (*en banc*); *see also Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 441 (1987) ("Rule 54(d) generally grants a federal court discretion to refuse to tax costs in favor of the prevailing party."). Equitable factors for determining

whether an award of costs should be denied include: (i) whether the suit was brought in the public interest, (ii) whether the suit was brought in good faith and the claims had merit, and (iii) the chilling effect on future litigations of imposing costs. *Ass'n of Mexican-Am. Educators,* 231 F.2d at 591-93.

**A. Plaintiffs brought this suit to further the public interest.**

A court should not impose costs on a party who acts as a "private attorney general" that has attempted to enforce a policy of national concern. *See Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402 (1968). In *Friends of the Earth, Inc. v. Brinegar*, the Ninth Circuit explained that Congress "further[ed] a strong policy of environmental protection" by enacting the National Environmental Policy Act (NEPA) and that this should be taken into account when taxing costs against an environmental plaintiff. 518 F.2d 322, 323 (9th Cir. 1975) (recognizing the purpose of NEPA, the "limited resources" of the environmental interest group, and reducing the injunction bond under Fed. R. Civ. P. 65(c) to 0.02% of the amount originally proposed). The public has an undeniable interest in the "democratic decisionmaking" process that is the core purpose of NEPA, and "public scrutiny [is] essential to implementing NEPA." *Or. Natural Desert Ass'n v. BLM*, 625 F.3d 1092, 1099-1100 (9th Cir. 2010). To impose costs on parties like plaintiffs, who attempt in good faith to enforce these important policies of national concern, would be inequitable and contrary to the intentions of Congress.

Plaintiffs are non-profit organizations dedicated to protecting and conserving public lands, watersheds, wildlife, wild places, and wild rivers in the American West and upper Columbia River Basin. Pls. Compl. at ¶¶ 12-14 (ECF No. 1). This suit was brought to protect the public interest, not to assert a private right or commercial interest. Specifically, plaintiffs challenged the U.S. Forest Service's (USFS) actions as violating federal environmental laws and abdicating its responsibility to manage federally permitted livestock grazing in a manner that

reduces the risk of conflicts between domestic livestock and newly recolonizing gray wolves, a state-listed endangered species and USFS "sensitive species," and other "threatened" species under the Endangered Species Act (ESA), on the Colville National Forest (CNF). Pls. Compl. at ¶ 1, 7. As such, plaintiffs acted as a "private attorney general" to enforce the national goals set forth in NEPA, the National Forest Management Act (NFMA), and the ESA.

### B. Plaintiffs brought this suit in good faith.

In determining whether costs should be imposed, courts should consider whether the suit was brought in good faith and whether the claims, though unsuccessful, were not without merit. *Ass'n of Mexican-Am. Educators*, 231 F.3d at 593; *White & White, Inc. v. Am. Hosp. Supply Corp.*, 786 F.2d 728, 730 (6th Cir. 1986). Costs should not be imposed against parties who bring suits in good faith because "the taxation of costs works as a penalty, which should not be imposed unless the loser can fairly be expected to have known at the outset that his position lacked substance." *Rural Hous. All. v. U.S. Dep't of Agric.*, 511 F.2d 1347, 1349 (D.C. Cir. 1974).

Requiring the parties to bear their own costs for this litigation is appropriate because plaintiffs brought this suit in good faith and plaintiffs' claims, though unsuccessful, were based on legal support found in Ninth Circuit case law. Imposing costs against non-profit organizations with limited financial resources that brought their suit in good faith to further the public interest and raised claims that were not without merit would be inequitable.

### C. Imposing costs on plaintiffs may have a chilling effect on future challenges to agency decisions involving matters of public interest.

In deciding whether to tax costs, courts should consider the "regrettable effect of discouraging potential plaintiffs" who seek to enforce policies of public concern. *Ass'n of Mexican-Am. Educators*, 231 F.3d at 593; *see also Stanley v.*

*Univ. of S. Cal.*, 178 F.3d 1069, 1080 (noting that the imposition of costs on plaintiffs of "modest means" may have a chilling effect on litigation). Imposing more than nominal costs on plaintiffs would have the very real effect of discouraging this plaintiff group, and other similarly situated groups, from pursuing important public interest litigation in the future.

The Ninth Circuit has instructed that "special precautions to ensure access to the courts must be taken where Congress has provided for private enforcement of a statute." *People of State of Cal. ex rel. Van de Kamp v. Tahoe Reg'l Planning Ag'y*, 766 F.2d 1319, 1325-26 (9th Cir. 1985). Without public interest groups like plaintiffs to ensure that the USFS adequately evaluates the impacts of federally permitted livestock grazing on national forest resources and properly manages livestock grazing on public lands in a manner that reduces the adverse effects of this activity to sensitive species, the goals of NEPA, NFMA, and the ESA may not be met. Because imposing costs on plaintiffs could chill future litigation that seeks to enforce important environmental laws, this Court should require the parties to bear their own costs, or tax only nominal, reasonable costs to plaintiffs.

## II. COSTS SHOULD BE DENIED BECAUSE DEFENDANTS HAVE NOT COMPLIED WITH 28 U.S.C. § 1924 AND LOCAL RULE 54.

The Court should not tax costs because defendants have failed to comply with the requirements of 28 U.S.C. § 1924, which provides that "[b]efore any bill of costs is taxed, the party claiming any item of cost or disbursement shall attach thereto an affidavit . . . that such item is correct and has been *necessarily incurred in the case* and that the services for which fees have been charged were actually and necessarily performed." (emphasis added).

The single declaration filed by defendants fails to explain—indeed, fails to even mention—how or why the listed costs were "necessarily incurred in [this] case." *See In re Aspartame Antitrust Litig.*, 817 F.Supp. 2d 608, 620 (E.D. Pa. 2011) (explaining that even a "conclusory statement" in "an affidavit from counsel

affirming that all relevant costs in th[e] case were necessarily incurred" was inadequate to demonstrate to the court the necessity of the copied materials).

This lack of explanation is both material and fatal to defendants' recovery of almost all their claimed costs for several distinct reasons. First, to the extent that some courts have allowed the government to recover statutory costs for the administrative record those opinions generally distinguished between expenses incurred for preparing the administrative record in the first instance, which are not recoverable costs, and the cost of making necessary copies of that record for the reviewing court and opposing counsel, which can be a taxable cost. *See, e.g., Conservation Cong. v. U.S. Forest Serv.*, 2010 WL 2557183, at *1 (E.D. Cal. June 21, 2010) (recovery of costs for "making copies" of the administrative record permitted). Here, defendants' declaration says they are seeking costs for "final preparation" of the administrative records and for "prepar[ing]" additional administrative records for the ESA and supplemental NEPA claims. Brubacher Decl. at ¶ 4 (ECF No. 57-1). Defendants make no attempt to explain why these are necessary copying costs.

Second, defendants improperly tax plaintiffs for the conversion of files into searchable PDF format, because virtually all files that comprise the administrative records for this case already existed in searchable PDF format prior to plaintiffs filing this lawsuit. For instance, all the primary planning documents for the Colville Forest Plan revision process, such as the draft programmatic Environmental Impact Statement (EIS), the Final EIS, all administrative objections to the draft Record of Decision (ROD) and the USFS's responses thereto, the programmatic ESA consultation documents (Biological Assessment and Biological Opinion), final ROD, 2019 Colville Forest Plan, and all supporting specialist reports had already been made publicly available in searchable PDF format on the

PLAINTIFFS' OBJECTION TO BILL OF COSTS                                                  5

USFS's planning website for the Colville National Forest.[1] Even the decades-old Allotment Management Plans (AMPs) and past Annual Operating Instructions (AOIs) were already converted to searchable PDF format and readily available on the USFS's "Range Management" website prior to the filing of this lawsuit.[2] *See also* AR01873-76 (Notes on range allotment information located on the Colville National Forest website). The same is true for many of the documents generated by the Washington Department of Fish & Wildlife, such as the WA wolf management plan, its associated environmental analysis and annual wolf reports.[3]

Further, all the "additional records" that defendants lodged with the Court on January 15, 2021 (ECF No. 26), after the parties had conferred over the completeness of the administrative record, were already produced in searchable PDF format and released to plaintiffs, free of charge, under the Freedom of Information Act (FOIA), 5 U.S.C. § 552 *et seq.*, prior to the filing of this case. Under FOIA, documents must be provided without charge if the disclosure is in the public interest. 5 U.S.C. §552(a)(4)(A)(iii); *see also Better Gov't Ass'n v. Dep't of State*, 780 F.2d 86, 94 (D.C. Cir. 1986).

In sum, there was no need for defendants (or their contractors) to scan these documents and perform OCR text recognition to convert them to searchable PDF format for this case. This work had already been performed prior to the filing of plaintiffs' lawsuit. Defendants only needed to compile these records from the USFS's own internal files as they already existed in the requisite electronic format.

---

[1] https://www.fs.usda.gov/detail/colville/landmanagement/planning/?cid=stelprd3824594 (last visited Oct. 12, 2021).

[2] https://www.fs.usda.gov/detail/colville/home/?cid=fseprd555741 (last visited Oct. 12, 2021).

[3] *See* https://wdfw.wa.gov/species-habitats/at-risk/species-recovery/gray-wolf/publications (last visited Oct. 12, 2021).

As such, defendants fail to demonstrate that converting files to searchable PDF format was a cost "necessarily incurred for the case." 28 U.S.C. § 1924. This failure is a sufficient basis for denying a bill of costs. *Delehant v. United States*, 2012 WL 6455808, at *1 (D. Or. Dec. 13, 2012).

Third, Local Rule 54(d)(1)(C)(iv) requires compliance with 28 U.S.C. § 1920(4), under which defendants must show that any copies made were "necessarily obtained for use in the case." General preparation of administrative records in the first instance is clearly not among the statutorily allowed costs. *See Country Vinter of N.C., LLC v. E. & J. Gallo Winery, Inc.*, 718 F.3d 249, 258-261 (4th Cir. 2013); *Allen v. U.S. Steel*, 665 F.2d 689, 697 n. 5 (5th Cir. 1982) (cost of gathering documents is not taxable).

Because the government has a preexisting duty to prepare an administrative record for any administrative action it takes, whether or not the action is challenged in court, *see, e.g.*, 5 U.S.C. §§ 556(e), 557(c), these records are not "necessarily obtained for use in the case." As the Supreme Court explained, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743 (1985). The fact that the government has been sued should not be an opportunity for the government to recoup costs of a record it is required by law to create.

### III.  THE REQUESTED COSTS ARE NOT RECOVERABLE.

Additionally, the requested costs are not recoverable because: (1) most services taxed do not constitute "making copies" in compliance with 28 U.S.C. § 1920(4); (2) defendants did not sufficiently itemize the bill of costs such that the Court may scrutinize it to determine any proper costs other than purchasing flash drives; and (3) defendants requested an unreasonably large sum.

First, Local Rule 54(d)(1)(C)(iv) requires compliance with 28 U.S.C. § 1920(4), which permits the recovery of costs expended "for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case." *See also Crawford Fitting Co*, 482 U.S. at 442-43 (costs not expressly authorized by 28 U.S.C. § 1920 are presumptively precluded). Thus, defendants must establish that a taxed service constitutes "exemplifying" or "making copies" of materials. However, a review of the bill and supporting declaration demonstrates that almost none of the costs sought are for tasks related to "exemplifying" or "making copies" but instead involve the preparation and management of an electronic administrative record of the agency's decisions.

Creating an index, hyperlinking documents to the index, Bates stamping PDF images, adding OCR to PDFs, and adding Bates-stamp numbers to the index are not taxable because this labor does not constitute "making copies" within the meaning of § 1920(4). *See, e.g., Country Vinter of N.C., LLC*, 718 F.3d at 261 ("[M]aking copies" includes only "converting electronic files to non-editable formats, and burning the files onto discs"); *Bark v. U.S. Forest Serv.*, No. 1:12-cv-1505-RC, 2014 WL 12768161, *4-5 (D.D.C. Dec. 31, 2014) (costs claimed for Bates-stamp numbering, production of an index, and "inserting Bates numbers corresponding to each document" in the record do not constitute "making copies" under § 1920(4)); *In re Aspartame Antitrust Litig.*, 817 F.Supp. 2d at 618 (explaining that the "majority of courts" exclude Bates numbering charges from taxable costs); *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 674 F.3d 158, 167 (3rd Cir. 2012) ("[P]roduction of an index for improving organization or access to the copied materials is not itself the act of 'making copies.'"). Similarly, courts have concluded that adding OCR to PDFs is not a recoverable cost. *See, e.g., City of Alameda v. Nuveen Mun. High Income Opportunity Fund*, Case Nos. 08-4575-SI, 09-1437-SI, 2012 WL 177566 at *5 (N.D. Cal. Jan. 23, 2012).

Second, to the extent that some courts have concluded that "making copies" includes burning copies onto discs or flash drives, bills that lack adequate specificity must be rejected or vastly reduced because they do not allow the court to scrutinize the bill to determine proper costs. *In Re Madison Guaranty Savings & Loan*, 366 F.3d 922, 929 (D.C. Cir. 2004) (cost award reduced for lack of specificity); *Welch v. U.S. Air Force*, 2003 WL 21251063 at *2 (N.D. Tex. May 27, 2003) (disallowing taxation because the "lump sum" for fees in defendants' bill of costs "offered no itemized breakdown of individual costs" and "provided no documentation supporting a reasonable per page cost for copying."); *In re Aspartame Antitrust Litig.*, 817 F.Supp. at 619 (denying taxation of costs because, due to insufficient itemization, court could not determine what copies were necessarily obtained for use in the case).

Instead of itemizing the costs taxed, the bill contains two categories: (1) $6020.00 of the total $6338.00 taxed is labeled "IT Dept./Computer Time Index, Convert, Code, OCR, Bates, Hyperlink," and (2) covering the purchase price of **20** flash drives. *See* ECF No. 57-1. Defendants do not specify the per page copying cost of necessary, unduplicated pages.

Thus, the only determinable, proper cost is the cost of four flash drives containing the administrative records—two for lead opposing counsel[4] and two for the Court—totaling $60.00. *See* Federal Defendants' Notice of Lodging Administrative Records, ECF No. 20, p. 3 ("The Administrative Records are contained on a single flash drive" with one copy for the Honorable Rosanna Malouf Peterson and one for the Court's Clerk, and one sent to counsel for Plaintiffs). The other 16 flash drives are not taxable. *Country Vinter of N.C., LLC,*

---

[4] Only plaintiffs' lead counsel, Ms. Schwartz, received flash drives, one for the originally lodged administrative records and one for the "additional records."

PLAINTIFFS' OBJECTION TO BILL OF COSTS                                9

718 F.3d at 260 ("[C]ourts do not tax costs for copies made for internal use because these copies are not 'necessarily obtained for use in the case.'").

Third, because defendants tax plaintiffs for 16 extra flash drives, thousands of duplicate pages, converting documents into a form in which they already publicly existed prior to the filing of this case, and general labor associated with preparing and managing an administrative record, the amount taxed is unreasonably large. "[D]enial of costs is a proper exercise of discretion" in circumstances where "taxable expenditures by the prevailing party are unreasonably large." *White & White, Inc.,* 786 F.2d at 730. In addition to taxing plaintiffs for 16 flash drives for their own use, defendants' administrative records were unnecessarily redundant; they contain multiple copies of the same large planning documents. *See e.g.,* Forest Plan Index ("FP Index"), pp. 46-51 (showing duplicate copies of all specialist reports supporting the Forest Plan DEIS, *e.g.*, botany, wildlife, scenic resources, fisheries, forest vegetation, hydrology, invasive plants, range, recreation, and fire ecology); FP Index pp. 104, 118-119 (multiple copies of the "CNF LMP FPEIS" or "CNF LMP Final Programmatic EIS"). The bill is unreasonably large to the extent that it taxes plaintiffs for anything more than the $60.00 incurred for purchasing four flash drives.

## IV. CONCLUSION

For these reasons, plaintiffs respectfully request that this Court deny the bill of costs, or, in the alternative, the Court should tax the plaintiffs the cost of four flash drives containing the records for lead opposing counsel, the Court, and the Court's Clerk, totaling $60.00, as this is the only reasonable, sufficiently itemized, and necessary cost.

//
///

PLAINTIFFS' OBJECTION TO BILL OF COSTS                                          10

| | |
|---|---|
| DATED this 18th day of October 2021. | Respectfully submitted, |
| | /s/ *Jennifer Schwartz* |
| | Jennifer Schwartz |
| | P.O. Box 12086 |
| | Portland, OR 97213 |
| | Ph: (503) 780-8281 |
| | jschwartz@wildearthguardians.org |
| | *Of Counsel for Plaintiffs* |

## CERTIFICATE OF SERVICE

I hereby certify that on October 18, 2021, I electronically filed the foregoing Plaintiffs' Objection to Defendants' Bill of Costs with the Clerk of the Court using the CM/ECF system, which will send notification of this filing to the attorneys of record.

Dated: October 18, 2021                    Respectfully submitted,

*/s/ Jennifer Schwartz*
Jennifer R. Schwartz